May it please the Court, James Fife of Federal Defenders, on behalf of the Appellant, Mr. Pena-Robles. Oregon law defines attempt more broadly than the generic equivalent by including a substantial step, acts that verify, not strongly corroborate, only a general criminal intent, not the specific purpose to commit the target offense. As a result, Mr. Pena's prior conviction was categorically neither an aggravated felony nor a crime of violence, and the record was insufficient to prove the contrary. The sequence of decisions in Walters, Moss, and then Rinkin shows that the Oregon defines attempt as extending to a substantial step and a general criminal intent, not acts that strongly corroborate the specific intent to commit the target offense, as is the case with generic attempt. Oregon Supreme Court, in the Walters case, considered that the evidence of general criminal intent sufficed to find that a substantial step had been taken. But then this Court, in Moss, reviewing the same evidence, found that it didn't strongly corroborate the intent to commit the target sex offenses, though it was sufficient to strongly corroborate the attempted kidnap. So it found the evidence sufficient for one of the charges, but the Supreme Court of Oregon had found that a general intent to commit some sort of crime, had some sort of nefarious purpose, was sufficient to find the specific intent to commit the sex offenses. Later, the Oregon courts in Rinkin recognized that there were two different definitions. There was the Walters definition and the Moss definition of attempt, and found that it was bound, of course, to follow the Oregon definition. And this was confirmed once again in the Jessen case, that recognizing that there was a Walters formulation and a Moss formulation and that the State courts were going to continue to follow the Walters broader definition of substantial step. I guess a couple of questions for you, since you started off with that issue. I'm actually a little more interested on the other issue, but let me just, since you started with this one. Doesn't the, or isn't the plain language of the Oregon statute nearly identical to the Federal definition? And if it is, coextensive with the Federal generic definition, isn't that significant here? Well, Your Honor, as often happens with the categorical analysis, the labels are the same. California robbery is called robbery, but this Court has found that it's not generic robbery. The names aren't controlling. Indeed, the Oregon attempt is called attempt. It uses language that uses substantial step. It uses all the language which was found in the generic definition. But the fact is the courts define them differently. It's the definition that the courts apply that makes those definitions different. Oregon defines substantial step as including a general criminal intent. Having some sort of criminal nefarious purpose is enough. And it only needs to have some verification of that purpose. Now, in the Walters-Moss case, the distinction is that that leads to different results. It's obviously that. But in those cases, weren't the courts tasked with determining whether the evidence was sufficient to uphold the conviction? So that's a different sort of review or set of criteria. And I'm not sure that there's a different focus in those cases. I believe the claim involved there was a sufficiency issue. It was framed in the context of a sufficiency issue. But evidence can be insufficient on two bases. One, the absolute quantum of evidence is not sufficient. Or the definitions differ. It's like one sheet doesn't fit every bed. If you have a different definition, the same evidence may be sufficient on one definition, but it's not sufficient on a different definition. And that's exactly the difference between Moss and Walters, is that the same evidence was being looked at, but the definitions differ. And because the definition is broader under the Walters, under the State definition, it was sufficient to find the sex offenses, attempted sex offenses. But when you apply the Moss definition, which is the narrower generic definition, it didn't suffice to show the sex offenses because it didn't strongly corroborate the intent to commit those offenses. And the State courts in Rinkin actually recognized afterwards that that was the case, that the definition, here's an actual quote from Rinkin, Walters does not seem to require exact verification of the particular criminal purpose charged. Compare that with what this court said in Sarbia. At common law, an attempt was defined as the specific intent to engage in criminal conduct and an overt act which is a substantial step towards committing the crime. Not a crime, the crime. But in Walters, in the Oregon case, what it found was the fact that the defendant had some sort of nefarious criminal purpose in mind was sufficient to corroborate that he intended to commit sex offenses. And that's just what this court in Moss said was insufficient, that that's not the definition of a substantial step. The government argues that this is a dispute over the evidence and how to measure that. It seems clear from just looking at the decisions in Rinkin and Judge Tang's dissent in Moss makes it really clear. It's the short three, I know it's a dissent, it's not the majority opinion, but sometimes we can understand the majority opinion sometimes better by the reflection seen in the dissent. Short three paragraph dissent, Judge Tang makes it clear we're talking about a legal issue, that Oregon's definition is broader. In fact, Judge Tang says that I agree with the majority that Oregon comes close to criminalizing bad thought. Because that's exactly what the Oregon Supreme Court based its determination on. It said he had some bad purpose in mind. Therefore, because he had been convicted of sex crimes in the past, we find that sufficient corroboration that he intended to commit a sexual assault on this victim. Well, when we look to see whether it's broader, the attempt statute is broader. In Walters, the Court specifically noted that Oregon's attempt statute codifies the model penal code substantial step test for distinguishing acts of preparation from attempt. That seems persuasive. Well, Your Honor, it doesn't seem like it's the question of whether this was an act of preparation or not. It's like the question is whether the evidence was sufficient to strongly corroborate the specific intent. It's not a question of whether you took certain preparation steps. And so it's true, these cases talk about Oregon and Walters are saying, yes, we're adopting the model penal code, we're following it, they use the same words, the statute has the same words. But in fact, they're interpreting them differently. Just like in California robbery, it says robbery. It's got some of these elements that look like robbery, but when you actually look at the definition, when you actually follow the definitions that the courts give it, they're not the same. I'd like to ask you questions about whether your client can collaterally attack, I guess, the underlying deportation order. And if you could just discuss the time that you have left the Ramos case. Your Honor, with ten minutes I had to decide what I was going to talk about. And I left the right to counsel issue out because that issue is now being considered by another panel in consolidated appeals, which were mentioned in the reply. Judge Wardlaw ordered consolidation of three cases in order to consider the question of whether there is an issue of prejudice in the right to counsel. Now, I note that because Judge Wardlaw was the author of the Ramos decision, which the government relies on as one of its principal cases. I think that's an indication that that consolidated case is going to come out with a significant revision of that. My guess is that there will be a finding that there is a rebuttable presumption of prejudice when there is a denial of the right to counsel. And if there is, what does that mean for your client? I think that here, because the government has not produced any evidence of a valid waiver, then we have to assume that there was prejudice. We're going to presume there's prejudice. But in any event, there's quite a bit of evidence in the record here to show that my client was prejudiced because simply the fact that we're giving so much discussion about the categorical analysis here, having an attorney certainly would have made an appreciable difference in challenging the categorical status, in challenging the modified categorical analysis documents. This may have pushed the case into being a hearing before an immigration judge instead of the expedited hearing. And many times in cases like this, that's what voluntary departure is for, that a lot of times the government or the immigration judge will offer voluntary departure to avoid that kind of mess, that kind of legal mess. Oh, I think Judge Pregerson has a question. Judge Pregerson, did you have a question? I will in a minute. I have a question. You just mentioned that the government hasn't produced a valid waiver. And there is a document, actually in the excerpt of record at age five and six, it's entitled Notice of Intent to Issue a Final Administrative Removal Order. And it appears that your client signed this document stating, checking the box, that he did not want to contest or request withholding of removal and admitting the allegations of the aggravated felony conviction that was the subject of his prior deportation, and that he understood that he had the right to remain in the United States for ten calendar days to apply for judicial relief, and he waived that as well. Are you saying this is not a valid waiver? Those are waivers of other rights. Those are not waivers of the right to counsel. He was informed that he could, perhaps informed that he had the right to counsel, but there was no express waiver. Wasn't he given a list of attorneys that were available if he could not afford an attorney? Yes, Your Honor. But I would analogize this to, if this were a criminal case and you were informed of your right to counsel at arraignment, but then no waiver was ever taken on the record and we proceeded to trial, we wouldn't come back afterwards and say, well, he was told of it and he didn't affirmatively assert it, therefore this proceeding was okay. We would never allow that. And that's the Sixth Amendment right. But I don't see there's any reason why that wouldn't be true under the Fifth Amendment right. Is there any Ninth Circuit precedent that requires a formal waiver of the right to an attorney in an expedited deportation or removal action? Your Honor, I'm not aware of a specific case. I will make an attempt to locate a case like that. But I think that the fact that it's an expedited removal, we don't determine the validity of waivers on the basis of the waiver of a fundamental right like the right to counsel is something that is not going to change whether it's an expedited removal or a proceeding before an IJ or in a criminal court. We're going to require the same explicitness and clearness of a waiver of a fundamental right like that. I'm sorry, I'm just not aware of a Ninth Circuit case to point to right now. I have a question for you. The government seems to take the position that when you're ever told you've got administrative remedies in a prior expedited order of removal, for that matter, which we've been talking about, then the question is, what administrative remedies do we have that we suggest we want? I think it's, Your Honor, it's the limited ones that are expressed in the form that he signed, that he had a certain number of days after the entering of the order to challenge a limited part of the determination. But like in any other case with a removal, the validity of those other waivers very much is connected to the validity of the waiver on his right to counsel. I think if he had an attorney, these would be. Well, I'll just ask him that specific question. So when he signed this notice of intent, that he had a notice of intent to issue a final administrative removal order, did he drop that piece of paper? Did he? He did, Your Honor. Yeah. And was he familiar with the English language? I believe so, Your Honor. I mean, or it seems to be likely that it was translated for him, if not. Was it translated? I'm not sure about that, Your Honor, and I have to go back and review the record on that case. Well, I could find no evidence that it was translated, and if it has the right to remain for 14 days and only to apply for judicial review, then what judicial review would he have applied for? Your Honor, given the fact that he wasn't aware of the alternatives in challenging the categorical status of his prior conviction, I'm not sure. Maybe his request for asylum might have been reviewable, but I just think that since there was no valid waiver of attorney, I can't say that it was knowing and intelligent that he was aware of his options. I'm not even sure what judicial review was available to him. Well, we were then thrown under the morass of the cost-to-cost system that we had set up throughout the years. Yeah, that's right, Your Honor. I think that's where one of the things that an attorney could have done is move this out of the pure administrative context into an adjudication before an immigration judge where there was more latitude to develop requests for relief or to maybe even go back and, even if it was an aggravated felony, an attorney could go back and collaterally attack the state conviction and perhaps obtain some relief that way. Thank you very much. Thank you. I think the only remedy he really had was sufficient to review the materials of appeals, and that certainly is not an administrative remedy. Judge Pregerson, Mr. White is now up at the podium on behalf of the United States. So, Mr. White, if you could just step aside there, just step to the left and answer Judge Pregerson's question. Your Honor, I have to say that I'm not completely familiar with the avenues of review that follow from the extradited removal. I know that they're extremely limited. I think when it's mentioning judicial review, your Honor is correct that probably the only alternative would be a petition for review to this Court challenging, well, any basis that he might have had, which might have been what we're talking about right now, that his prior conviction was not a categorical aggravated felony. The Court might have found that that was rather undeveloped at this point since there was no discussion of that or development of that before the immigration officer or before an immigration judge. All right. Thank you. Thank you. Mr. White. Good morning. May it please the Court, Victor White for the United States. I want to begin by just – If my interruption is not in the abuse, do you argue that when your witness failed to address administrative remedies on the prior extradited formula removal, what administrative remedies did he have that he failed to address? Certainly. Beginning with, I want to just clarify the notice of intent to issue the administrative removal order, which indicates that it was served on Mr. Pena-Robles in English, and he did sign an acknowledgment that he received the notice of intent. Well, you're not answering my question, are you? I would ask that question, correct? I apologize, Your Honor. The administrative remedies that he could have sought was, and one of them that he did seek, was referral of his request for withholding of removal to the immigration judge. So approximately one – How would he know that? The form itself indicates whether or not he wishes to request withholding of removal. That's the one that he indicated he didn't wish to request withholding of removal. But nevertheless, there was a record of sworn statement that was submitted where he was interviewed by an immigration officer. During that interview with the immigration officer, he indicated that he had a fear of removal to Mexico, and so his case was referred to an immigration judge. That's in the excerpt of record at 65. The interview with the immigration officer is excerpt of record at 61. Well, what administrative remedies had he failed to resolve? He failed to challenge both the expedited removal order and he failed to challenge the immigration judge's finding that he had no valid basis for withholding of removal. He could have sought a motion to reopen, he could have appealed it to the Board of Immigration Appeals, or he could have filed a petition for review. How would he realistically know all this? It indicates at the bottom of the Notice of Intent to Issue, page 5, you have the right to remain in the United States for 14 calendar days so that you may file a petition for review of this order to the appropriate U.S. Circuit Court of Appeals. You may waive your right to remain for the 14-day period. If you don't file the petition for review within this 14-day period, you will still be allowed to file a petition from outside the United States so long as the petition is filed with the appropriate U.S. Circuit Court of Appeals. How do we know, in light of Ramos, that he validly waived that? I mean, because in Ramos, the case there, they give him far more due process than in his case. And I think the case of Ramos is actually distinguishable because Ramos was dealing with whether or not there was basically an error in following the regulations by immigration officials, and it was dealing with a stipulated removal order, not an expedited removal order. Actually, the Garcia-Martinez case dealt with the expedited removal order, and that found that basically an inherently biased adjudicator wasn't going to taint the sort of deportation process, and that because the defendant there was an aggravated felon, he couldn't challenge his deportation order. So here, the fact that he signed the acknowledgment that he received this on July 9, 2009, the fact that he signed also farther down, this is Exhibit Excerpt of Record 60, sorry, Excerpt of Record 6, he also indicated that, you know, it was served on him in the English language. He also indicated that he didn't wish to contest. Sotomayor, I guess I'm still focused and I'm trying to appreciate the difference between the stipulated order of removal versus this notice of removal. Is this a notice of removal in this case? This is a notice of removal, and that's basically the charging document, which is telling the defendant of his rights, informing him of his rights, but these proceedings are not going before an immigration judge. They did go before an immigration judge because Mr. Peña Robles indicated to the immigration officer that he had a fear of returning to Mexico. But why in the Ramos case, there was a decision made that they should have been given, you know, more than what they were given, and there was an officer explaining to the individuals. Those were in the proceedings under Immigration and Nationality Act 240, and those were basically ones where the defendant had a right to go before the immigration judge to have the immigration judge decide whether or not he was deportable. However, he stipulated to the fact that he could be removed, and that was reviewed by the immigration judge without actually having the hearing present for him. This is a different context because the defendant is an aggravated felon, and because he's an aggravated felon and hasn't been admitted as a lawful permanent resident, these administrative orders are required. Well, if he hadn't signed this form, wouldn't he have possibly gone before an immigration judge? Only if he was indicating that he wished to challenge the finding, yes. Well, and he made a statement regarding, you know, his fear of Mexico and going back. So I guess if he hadn't signed this form, the ramifications or the possibility of him needing to go before a judge becomes a lot more real, doesn't it? Well, it does, but we have to look at also what would have been the end result. When he's an aggravated felon, when the fact that basically his conviction for attempted murder under Oregon law is basically a specific intent to knowingly murder is sufficient to satisfy an aggravated felony. So there would have been no prejudice and no different outcome. But what if the case, you know, that's decided by the panel that heard the case in May, decides that there are prejudice, you know, is not necessary? What does that mean? Well, I think, again, the state of the law is that it's the defendant's burden to show that there's prejudice. And Garcia-Martinez, which is the one that dealt with actually the expedited removal order, held that there needed to be a showing of actual prejudice. And so even if for some reason the panel were to come up with some sort of presumption here, there is no showing of prejudice because the defendant, as an aggravated felon, was ineligible for the forms of release that he claims to be seeking. He's ineligible for voluntary departure as a matter of law. He's ineligible for asylum. And with regard to the claim for withholding of removal, that claim was basically reviewed before the immigration judge, found not to be a credible claim, and that's not what's being sought in the current challenge. Well, isn't he entitled to a lawyer when he occurs before an immigration judge? Yes, Your Honor, at no expense to the government. Isn't the immigration judge at that time required to advise them that he has a right to have an attorney? Is that part of the immigration judge's job? Yes, Your Honor, and the excerpt of record at 66 indicates in the notice of referral to immigration judge you may be represented in this proceeding at no expense to the government by an attorney. It was served on him in person on August 10, 2009. He was also provided with a list of free legal service providers that he signed and dated, and that's excerpt of record at 68. And again, in the form that he was provided as to the referral and giving him his court date, this is excerpt of record at 70. The immigration judge may allow you to be represented in this proceeding at no expense to the government by an attorney or other individual authorized and qualified to represent persons before an immigration court. If you wish to be so represented, your attorney or representative should appear with you at the hearing. And so in light of the evidence here in this case, we are also relying on the Galicia-Gonzalez case, the Ninth Circuit case, which is basically there's been no declaration by the defendant, and we have basically the evidence that shows that there was a waiver of rights and that in Galicia-Gonzalez there was a finding that the waiver of appeal and where the government introduced official records that show a valid waiver of rights, that the burden shifts to the defendant to come forward with evidence tending to prove that the waiver was invalid. And so we would be relying on the fact that the defendant, that Peña Robles, was an aggravated felon. He hadn't been admitted as a lawful permanent resident, so these proceedings as an administrative removal order were proper. He got judicial review, even though he signed the form saying that, I don't wish to contest and seek withholding of removal. During his interview with the immigration officer, he expressed fear of return to Mexico. His case was referred to an immigration judge, and then he didn't seek to challenge the immigration judge's finding. So we're not talking about some sort of quick process that occurred with Mr. Peña Robles. It's not like he was served on July 9th with this notice of intent to remove him, and he was later removed that same day. This was a period of over a month. I believe it was 44 days that had passed that basically he'd been issued the charging document and until the time of his removal on August 22nd, 2009. All right. Well, thank you. Thank you. Do you want a minute? And I just wanted to give Judge Conlin the cites that I didn't have at the time. Cases dealing with the validity of waiver of counsel specifically are Tawadros. That's at 364, Fed 3rd, 1099. And Ram v. New Casey, that's at 529, Fed 3rd, 1238. And those are cited in the briefs. Thank you. Thank you. You have to fill out one of those briefs. Sorry, Your Honor, what was that? When you come up with a citation, you have to fill out one of those briefs. Oh, definitely, Your Honor. I will sometime prepare those in advance. Yeah. Thank you. Okay. Thanks. Thank you both very much. Appreciate your argument here today. The case is submitted. The next case is United States of America v. Orillon Lopez Solis.
judges: Conlon, Pregerson, Murguia